IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PAMELA SCHELL,

                       Plaintiff,         Civil Action No.
      v.                          3:10-CV-1476 (TJM/DEP)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.

_____

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF:

OLINSKY LAW GROUP        HOWARD D. OLINSKY, ESQ.
300 South State Street
Syracuse, New York 13202

FOR DEFENDANT:

OFFICE OF GENERAL COUNSEL   THOMAS C. GRAY, ESQ.
Social Security Administration    Chief Counsel, Region II
26 Federal Plaza
New York, New York 10278      STEPHEN P. CONTE, ESQ.
                             Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

      Plaintiff Pamela Schell has commenced this proceeding on behalf of

her son, R.A., pursuant to section 205(g) of the Social Security Act (the

"Act"), as amended, 42 U.S.C. § 405(g), seeking judicial review of an

administrative determination denying her son's application for supplemental security income ("SSI") benefits.  Plaintiff maintains that her son, who suffers from attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), and partial hearing loss, was disabled at the relevant times and that a contrary finding by an administrative law judge is not supported by substantial evidence in the record and resulted from the ALJ's failure to fully develop the record and fill critical gaps.

Having carefully reviewed the record that was before the agency and applied the requisite deferential standard of review, I find that the Commissioner's determination resulted from the application of proper legal standards and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in December of 1999; at the time of the administrative hearing in this matter, held on February 17, 2010, he was ten years old. Administrative Transcript at pp. 36, 112.[1]  During the relevant times the plaintiff, who lives with his mother, has attended elementary school in the Union-Endicott Central School District in a mainstream setting, with added

---

[1]    Portions of the administrative transcript (Dkt. No. 8), which was compiled by the Commissioner and is comprised in large part of the medical records and other evidence which was before the agency when its decision was made, will be cited hereinafter as "AT ___."

assistance in reading and mathematics.  AT 53, 120, 137, 342, 380.  R.A.

has been diagnosed with bilateral moderate symmetrical sensorineural

hearing loss involving high frequencies and has been provided with various

amplification devices to enhance his hearing, including a special broadcast

system provided by the school district for classroom use.  AT 46-47, 317-18,

321.

      The plaintiff's son has never been hospitalized for psychiatric reasons.

AT 342.  He has, however, received mental health treatment.  R.A. has been

treating with Broome County Mental Health since August 4, 2008, during

which time he has been seen by both Barbara Simon, a licensed clinical

social worker ("LCSW"), and Dr. Ivan Fras, M.D., a psychiatrist.  AT 373-381.

During the course of that treatment, R.A. has been consistently diagnosed as

suffering from ADHD, a condition which appears to be fairly well managed

through the use of Ritalin. AT 49, 55.  Other diagnoses rendered over time

have included PTSD, adjustment disorder with mixed disturbance of mood

and conduct (improved); rule out ("R/O") bipolar disorder, not otherwise

specified ("NOS");  phonological disorder; R/O learning disorder, NOS; and

R/O anxiety disorder, NOS.  AT 346, 373, 379.   According to a Childhood

Disability Evaluation Form, testing of R.A. has revealed a full scale

3

Intelligence Quotient ("IQ") of 77, a performance IQ of 81, and a verbal IQ of 78.[2]  AT 350.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before The Agency

Plaintiff filed an application on behalf of R.A. for SSI benefits on October 9, 2008, alleging a disability onset date of September 8, 2008.  AT 112.  Following denial of that application on November 28, 2008, AT 81, at plaintiff's request a hearing was conducted on February 17, 2010 before ALJ Edward I. Pitts; plaintiff was represented by counsel during the course of that hearing.  *See* AT 36-79.  Following the hearing, ALJ Pitts issued a decision on May 6, 2010, finding that R.A. was not disabled at the relevant times and denying his application for SSI benefits.  AT 15-26.

In his decision ALJ Pitts applied the now familiar three-step test for gauging childhood disability, initially finding at step one that R.A. had not engaged in substantial work activity at any relevant time.  AT 15-18.  The ALJ next determined that plaintiff's son suffers from several medically determinable impairments properly regarded as severe, including ADHD,

---

[2]    The test results disclosed in the evaluation form do not appear in the record.

hearing loss, and PTSD.[3]  *Id.*  After determining that none of R.A.'s

impairments meets or equals any of the listed, presumptively disabling

conditions set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P. App. 1,

the ALJ turned to determining whether any of his impairments or the

combination thereof functionally equaled any listed condition, focusing on the

six domains specified by regulation as being relevant to the inquiry.  *See* 20

C.F.R. § 416.926a(d); AT 18-26.  Based upon a survey of the available

medical and other evidence and the claimant's hearing testimony, the ALJ

found that R.A. has no limitation in the areas of acquiring and using

information, ability to care for himself, and health and physical well being, and

less than marked limitation in attending and completing tasks, interacting and

relating with others, and moving about and manipulating objects.  *Id.*  The

ALJ thus concluded that R.A. was not disabled at any of the relevant times

and is therefore ineligible for receipt of SSI benefits.  AT 26.  The ALJ's

decision became a final determination of the agency on October 29, 2010,

the date upon which the Social Security Administration Appeals Council

denied plaintiff's request for a review of that opinion.  AT 1-3.

_____

[3]     The ALJ tempered this finding by noting that RA's hearing loss "has some effect on the [his] ability to interact and relate but is well compensated by appropriate amplification equipment."  AT 18.

B.    This Action

Plaintiff commenced this action on December 8, 2010.  Dkt. No. 1.

Issue was thereafter joined on April 22, 2011 through the Commissioner's

filing of an answer, accompanied by the medical records and other evidence

before the agency at the time the administrative determination was made.

Dkt. Nos. 7, 8.  With the filing of plaintiff's brief on June 8, 2011, Dkt. No. 10,

and that on behalf of the Commissioner on July 21, 2011, the matter is now

ripe for determination and has been referred to me for the issuance of a

report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P.

72(b).[4]

III.   DISCUSSION

A.    Standard of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether the

---

[4]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order, once issue has been joined an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427

(1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.

Ct. 206, 217 (1938)); *Jasinski v. Barnhart,* 341 F.3d 182, 184 (2d Cir. 2003).

To be substantial, there must be "'more than a mere scintilla'" of evidence

scattered throughout the administrative record. *Richardson*, 402 U.S. at 401,

91 S. Ct. at 1427 (quoting *Consolidated Edison Co.*, 308 U.S. at 229, 59 S.

Ct. 219); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*).  "To

determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the

evidence must also include that which detracts from its weight." *Williams*,

859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488,

715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have

been applied, and/or that substantial evidence does not support the agency's

determination, the agency's decision should be reversed.  42 U.S.C. §

405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may

remand the matter to the Commissioner under sentence four of 42 U.S.C. §

405(g), particularly if deemed necessary to allow the ALJ to develop a full

and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at

148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

B.   Childhood Disability Determination: The Three-Step Evaluation Process

In 1996 Congress significantly altered the childhood disability terrain for purposes of eligibility for SSI benefits under the Social Security Act by enacting the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA").  Pub. L. No. 104-193, 110 Stat. 2105 (1996).[5]  In accordance with the PRWORA, which took effect on August 22, 1996, an

---

[5]   Entitlement to SSI benefits is governed by a federal program intended to provide benefits to those who cannot work because of age, blindness, or disability, and who meet certain statutory income and resource limitations.  42 U.S.C. § 1381; *see Schweiker v. Wilson*, 450 U.S. 221, 223, 101 S. Ct. 1074, 1077 (1981).

individual under the age of eighteen is disabled, and thus eligible for SSI

benefits, if he or she

> has a medically determinable physical or mental
> impairment, which results in marked and severe
> functional limitations, and which can be expected to
> result in death or which has lasted or can be expected
> to last for a continuous period of not less than 12
> months.

42 U.S.C. § 1382c(a)(3)(C)(i).  That definitional provision goes on to exclude

from coverage any "individual under the age of [eighteen] who engages in

substantial gainful activity. . . ."  42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative

process to be employed in determining whether a child can meet the

statutory definition of disability.  20 C.F.R. § 416.924; *Kittles v. Barnhart,* 245

F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02 Civ.3127,

2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003) (Gorenstein, M.J.),

*adopted*, No. 02 Civ. 3127, Dkt. No. 18 (S.D.N.Y. July 25, 2003) (Preska,

D.J.).  The first step of the test, which bears some similarity to the familiar

five-step analysis employed in adult disability cases, requires a determination

of whether the child has engaged in substantial gainful activity.  20 C.F.R. §

416.924(b); *Kittles,* 245 F. Supp. 2d at 488.  If so, then both statutorily and by

regulation the child is ineligible for SSI benefits.  42 U.S.C. §

10

1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the prescribed test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If the existence of a severe impairment is discerned, the agency must then determine whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles,* 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Under final regulations which became effective on January 2, 2001, resulting in material revision of the test dictated under the superceded interim rules, *see, e.g., Kittles*, 245 F. Supp. 2d at 488-89, analysis of functionality is

11

informed by consideration of how a claimant functions in six main areas

denominated as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL

21032012, at *8.  The domains are described as "broad areas of functioning

intended to capture all of what a child can or cannot do."  20 C.F.R. §

416.926a(b)(1).  Those prescribed domains include

> (i)    [a]cquiring and using information;
> (ii)   [a]ttending and completing tasks;
> (iii)  [i]nteracting and relating with others;
> (iv)   [m]oving about and manipulating objects;
> (v)    [c]aring for [oneself]; and
> (vi)   [h]ealth and physical well-being.

20 C.F.R. § 416.926a(b)(1).  Functional equivalence is established in the

event of a finding of an "extreme" limitation, meaning "more than marked," in

a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at

*8.  An "extreme limitation" is an impairment which "interferes very seriously

with [the claimant's] ability to independently initiate, sustain, or complete

activities."  20 C.F.R. § 416.926a(e)(3)(i).  Alternatively, a finding of disability

is warranted if a "marked" limitation is found in any two of the listed domains.

20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked

limitation" exists when the impairment "interferes seriously with [the

claimant's] ability to independently initiate, sustain, or complete activities."  20

C.F.R. § 416.926a(e)(2)(i).  "A marked limitation may arise when several

activities or functions are impaired, or even when only one is impaired, as

long as the degree of limitation is such as to interfere seriously with the ability

to function (based upon age-appropriate expectations) independently,

appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 112.00(C).

    C.    <u>The Evidence in this Case</u>

        1.    <u>The ALJ's Survey of Medical Records and Opinions</u>

In support of her challenge to the Commissioner's determination,

plaintiff maintains that the ALJ failed to properly weigh the available evidence

concerning R.A.'s condition.  It is clear that from his decision, however, that

ALJ Pitts carefully considered the available medical evidence including,

principally, reports from R.A.'s treating psychiatrist Dr. Fras and LCSW

Simon, and that the medical evidence fully supports his findings.

In an assessment report dated February 18, 2010, LCSW Simon

concluded, based upon her treatment of R.A., as well as that of Dr. Fras, that

he suffers from no limitation in acquiring or using information and less than

marked limitations in attending and completing tasks, interacting and relating

with others, and moving about and manipulating objects.  AT 376.  While the

ALJ's decision does not expressly state the weight he accords LCSW

Simon's assessment, it clearly supports the ALJ's determination.[6]

The ALJ's determination also draws considerable support from the report of a child psychiatric evaluation conducted on November 14, 2008 by licensed psychologist Mary Ann Moore.  AT 342-47.  In his decision the ALJ stated that he has given "some weight" to that evaluation.  AT 21.  After recounting R.A.'s history and symptomology, including an incident from 2007 when R.A. was sexually abused by a neighborhood teen, Dr. Moore concluded that plaintiff exhibited an age appropriate appearance, overall good speech intelligibility with a mild articulation problem, and coherent and goal directed thought processes.  AT 344.  Dr. Moore also assessed R.A.'s affect as "of full range and appropriate in speech and thought content", and characterized his mood as "euthymic," with a clear sensorium and proper orientation to person and place.  *Id.*  Dr. Moore did find that plaintiff's attention and concentration were impaired, possibly due to ADHD, and his recent and remote memory skills were impaired as well.  AT 344-45.  Dr. Moore diagnosed R.A.'s cognitive functioning as in the below average range,

_____

[6]    Implicit in the statement that the ALJ has given "great weight to the opinion of claimant's treating physician, Dr. Fras" is endorsement of LCSW Simon's report since she practices with Dr. Fras and the exhibit cited (Exhibit 6F) includes the Simon report. *See* AT 21.

and possibly borderline, with fair insight, and judgment given to impulsivity.

AT 345.  Dr. Moore concluded by noting that

> [t]he claimant has difficulty attending, following, and
> understanding age-appropriate directions and performing simple
> rote tasks.  He may have difficulty at times interacting with peers
> and adults.  He can be argumentative and aggressive. [R.A.] may
> not always be aware of danger and take needed precautions.  He
> is not always asking questions or requesting assistance in age-
> appropriate manner and not learning to his cognitive functioning.
> He would best respond to an environment with a minimum
> amount of changes and a great deal of external structure and
> consistency.

AT 345.  Dr. Moore added that the results of her examination "appear to be

consistent with psychiatric problems, which may significantly interfere with

the claimant's ability to function on a daily basis."  AT 346.  Dr. Moore

recommended that R.A. continue to receive psychiatric and psychological

treatment as well as special educational services, and noted his prognosis as

fair.  *Id.*

The ALJ's conclusions are also supported by a childhood disability

evaluation form completed by psychologist E. Kamin.  AT 348-54.  After

concluding that plaintiff suffers from ADHD and borderline intellectual

functioning, Dr. Kamin concluded that those conditions neither meet nor

equal, medically or functionally, any of the listed, presumptively disabling

conditions.  AT 348.  Addressing functional equivalence, the consultant found

no limitation in the areas of interacting and relating with others, moving about and manipulating objects, and caring for oneself, and less than marked limitations in the remaining domains of acquiring and using information, attending and completing tasks, and health and physical well being.  AT 350-52.  This evaluation, which was accorded some weight by the ALJ, is also fully supportive of his determination.  *See* AT 21.

Plaintiff challenges the ALJ's reliance upon LCSW Simon's opinions which are predicated, insofar as the domains of attending and completing tasks and interacting and relating are concerned, upon conclusions pertaining to one-to-one sessions, suggesting that these findings do not meet standards enunciated in Social Security Ruling ("SSR") 09-1P.[7]  It should be

---

[7]    That ruling provides, in pertinent part, as follows:

It is important to determine the extent to which an impairment(s) compromises a child's ability to independently initiate, sustain, and complete activities. To do so, we consider the kinds of help or support the child needs in order to function. See 20 CFR 416.924a(b). In general, if a child needs a person, medication, treatment, device, or structured, supportive setting to make his functioning possible or to improve the functioning, the child will not be as independent as same age peers who do not have impairments. Such a child will have a limitation, even if he is functioning well with the help or support.

The more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independent the child is in functioning, and the more severe we will find the limitation to be.

noted, moreover, that in her consultative evaluation, LCSW Simon made the

following statement:

> The claimant has difficulty attending, following, and
> understanding age-appropriate directions and
> performing simple rote tasks.  He may have difficulty
> at times interacting with peers and adults.

AT 345.   A non-examining psychological consultant, however, noted that

plaintiff's classroom teacher found that R.A. has no problems attending and

completing tasks, and that a review of school records fails to reveal any

difficulties in interacting and relating to others, an observation which was

confirmed by the consultative evaluator who noted that during the psychiatric

consultative evaluation "the claimant was restless, but socially-related, and

smiled and laughed appropriately."  AT 351.   Given these findings, the ALJ

did not improperly place reliance upon opinions of LCSW Simon which are

limited to one-to-one sessions and do not translate well to other settings.

In sum, the medical records from R.A.'s two treating sources as well as

from an independent examining consulting psychologist and a childhood

disability evaluation form together amply support the ALJ's findings regarding

the six critical domains.

---

SSR 09-1P.

2.    Development of the Record

Plaintiff next argues that the ALJ failed to fulfill his obligation to fully

develop the record in order to address a critical void in the available evidence

bearing upon the plaintiff's condition.

By statute, an ALJ is duty bound not only to develop a claimant's

complete medical history for at least twelve months prior to the filing of an

application for benefits, "but also to gather such information for a longer

period if there [is] reason to believe that the information [is] necessary to

reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998)

(citing 42 U.S.C. § 423(d)(5)(B) as incorporated by 42 U.S.C. §

1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)).  The applicable regulations

supplement this statutory requirement, directing that an ALJ subpoena a prior

disability file pertaining to the claimant if deemed "'reasonably necessary for

the full presentation of [the] case.'"  *DeChirico*, 134 F.3d at 1184 (quoting 20

C.F.R. § 416.1450(d)(1)).  While these obligations are particularly critical in

the case of a claimant who is unrepresented by counsel, *see Mimms v.*

*Heckler*, 750 F.2d 180, 185 (2d Cir. 1984), they also have application in a

case such as this, where the information sought was specifically requested

by plaintiff's counsel.  *Contrast DeChirico*, 134 F.3d at 1184 (finding that ALJ

did not abuse his discretion in failing to subpoena prior file since fact of plaintiff's impairment was not in dispute and counsel offered no basis to conclude that the former file would be relevant).

In this instance, the record fails to disclose any critical gaps sufficient to trigger the ALJ's duty to develop the record.  While plaintiff asserts that the ALJ should have contacted R.A.'s teacher and/or school psychologist for supplemental records, there is no indication that such records would have provided significant missing information.  In fact, the evidence is somewhat equivocal as to whether counseling records regarding R.A. exist.  *Compare* AT 170, 342 (implying that R.A. sees a school counselor, Sharon Moss, one to two times a week at school and in addition is in several small groups including Banana Splits) *with* AT 118 (indicating that R.A. does not see any other providers).

To place plaintiff's argument in context, I note that at the close of the hearing the parties discussed the submission of additional exhibits.  *See* AT 72-75.  This followed an earlier discussion at the outset of the hearing, at which point the ALJ inquired of plaintiff's attorney as to whether she was intended to submit any additional exhibits. AT 39-40.  The attorney responded that records would be obtained from the Broome County

Community Mental Health Services,  Dr. Fras, LCSW Simon, R.A.'s teacher, and his audiologist, and submitted as additional exhibits.  *Id.*  Following the hearing, additional evidence was submitted by plaintiff's counsel, including a joint letter dated October 1, 2009 from two of R.A.'s teachers, AT 313; additional records from Broome County Community Mental Health Services for the period dated August 19, 2008 and December 9, 2008, AT 315, 379-81; an audiological evaluation dated September 4, 2008, AT 382-85; and an occupational therapy evaluation dated September 13, 2009, AT 316-40. After requesting additional time to submit further medical records, plaintiff submitted additional materials on March 8 and 9, 2010.  AT 315-16.  There is no indication of any request for additional time to procure and submit more evidence, nor of any solicitation of the agency's assistance in obtaining additional records.

Based upon my review of the record, I find no critical gaps in the information possessed by the agency, including R.A.'s medical history and school records.  I note, parenthetically, that the record reflects R.A.'s school was contacted for information on at least four separate occasions.  *See* AT 355-58.  In light of these circumstances, I find no failure on the part of ALJ Pitts to satisfy any obligation to fully develop the record in this action in order

to provide him with the necessary information to make an informed decision regarding R.A.'s condition.

### 3.   Plaintiff's Credibility

In his decision ALJ Pitts concluded that the testimony of the plaintiff, R.A.'s mother, given at the administrative hearing was "mostly credible".  AT 21.  Plaintiff challenges this credibility determination, although without citing any portion of plaintiff's testimony that is alleged to have been improperly discounted on credibility grounds.[8]

When evaluating disability an ALJ must take into account subjective statements regarding a claimant's symptomology.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus v. Califano*, 615 F.2d 23, 27-28 (2d Cir. 1979)).  In doing so, however, the ALJ is not required blindly to accept the subjective testimony of a claimant.  *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*) (other citations omitted).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning symptomology*.  See Mimms,* 750 F.2d at 185-86.  In deciding how to exercise that discretion the ALJ must

---

[8]      In his decision ALJ Pitts does not identify any statements of the plaintiff rejected as lacking in credibility.

21

consider a variety of factors which ordinarily would be relevant on the issue of

credibility in any context, including the claimant's credibility, his or her

motivation, and the medical evidence in the record.  *See Sweatman*, 1998

WL 59461, at *5 (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ

must reach an independent judgment concerning the actual extent of pain

suffered and its impact upon the claimant's ability to work.  *Id.*

When assessing a claimant's systems, an ALJ must first determine

whether there is an underlying, medically determinable physical or mental

impairment empirically demonstrated by available evidence that could

reasonably be expected to produce the claimant's symptoms.  20 C.F.R. §

404.1529(c), 416.929(c).  If that finding is made, then the ALJ must next

assess whether the impairment could reasonably be expected to produce the

claimed level of symptomology.  *Id.* at §§ 404.1529(c), 416.929(c).  When

making that analysis the ALJ must weigh the intensity, persistence and

limiting affects of the claimant's symptoms to determine the extent to which

they may limit his or her ability to function, including in a workplace setting.

*Id.* at §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  When such testimony is

consistent with and supported by objective clinical evidence demonstrating

that claimant has a medical impairment that one could reasonably anticipate

would produce such pain, it is entitled to considerable weight.[9]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence, or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony.  *See Martone*, 70 F. Supp. 2d at 151.

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human*

---

[9]      In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

*Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

In this instance, there is no indication that any assessment that may have been made by the ALJ concerning the claimant's credibility played a role in the disability analysis.  Indeed, conspicuously absent from plaintiff's brief is any claimed testimony from R.A.'s mother that contradicts the ALJ's finding and was apparently rejected on credibility grounds.  Accordingly, I recommend that this argument be rejected.

### 4.   Consideration of Six Domains of Functioning

Plaintiff's final argument surrounds the ALJ's conclusion that R.A. suffers from no marked limitations in any of the six pertinent domains of childhood functioning.  Plaintiff maintains that the evidence reflects such marked impairments in at least two such domains.  Specifically, plaintiff argues that Dr. Moore's consultative evaluation, coupled with the co-signed letter from two of R.A.'s teachers, reflect marked limitations in the areas of attending and completing tasks, and interacting and relating with others.

Before addressing the specifics of this argument, as a backdrop, the court notes that whether evidence in the record is equivocal and could support a contrary conclusion is not outcome determinative; rather, the inquiry at hand is whether the Commissioner's determination is supported by

substantial evidence.  *Cormano v. Sullivan*, No. CV 88-2022 ,1990 WL 92706, at *3 (E.D.N.Y. Jun. 26, 1990) (citing *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)); *see also Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) ("We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry different.") (citations omitted).

Undeniably, Dr. Moore's examination reveals that R.A. suffers from severe mental impairments, as indeed the ALJ concluded.  It does not on its face, however, directly compel a finding that R.A. suffers from marked limitations in any of the critical areas of functioning.  Nor does a written letter from two of R.A.'s teachers noting that such behavior on the part of R.A. as rocking in his chair, roaming around the room, making inappropriate noises, being disrespectful at times to adults and students, exhibiting difficulty in attending to the task at hand, and choosing not to wear his hearing amplification device, compel a contrary conclusion.  *See* AT 313.

As was previously noted, school records contained within the administrative transcript reflect that R.A. has functioned relatively well in school in a mainstream class setting, with only modest outside help in the areas of math and reading.  On November 12, 2008, Susan Sullivan, R.A.'s

third grade teacher, reported that he had no problems in acquiring and using

information, attending and completing tasks, interacting and relating to

others, moving about and manipulating objects, and caring for himself.  AT

137-44.  R.A.'s second grade teacher, Mrs. Barton, reported on April 2, 2008

that, while he had word difficulties, his reading was progressing nicely.  AT

151.  Simply stated, while R.A. school records suggest some difficulties, they

do not reflect marked limitations in any of the relevant domains.

In sum, the record that was before the agency, as a whole, provides

substantial evidence to support the ALJ's conclusion that R.A. did not suffer

marked limitations in any of the six relevant domain areas.

IV.     SUMMARY AND CONCLUSION

The evidence contained within the administrative record in this case,

including from R.A.'s school, treating sources, and examining consultants, is

consistent with and supports the conclusion that while he plainly suffers from

psychological impairments, including ADHD and potentially PTSD, that

qualify as severe for purposes of step two of the three-part childhood

disability protocol, he does not experience any marked limitations in any of

the six relevant areas of functioning critical to the childhood disability

analysis.   Accordingly, having concluded that the ALJ's determination is

supported by substantial evidence and resulted from the application of proper legal principles, it is therefore hereby respectfully,

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination finding no disability and denying plaintiff SSI benefits be CONFIRMED, and plaintiff's complaint in this case be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      November 28, 2011
            Syracuse, NY

27